IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| CRYSTAL CROSS, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | No. 3:14-CV-18 (CAR) |
| DAVID LACEY, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

## ORDER ON DEFENDANT'S PRE-ANSWER MOTION TO DISMISS

Currently before the Court is Defendant Georgia State Trooper David Lacey's Pre-Answer Motion to Dismiss [Doc. 15] this action pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. Having considered the Motion and the applicable law, Defendant's Motion to Dismiss [Doc. 15] is **DENIED**.

## LEGAL STANDARD

On a motion to dismiss, the Court must accept as true all well-pleaded facts in a plaintiff's complaint.[1]  To avoid dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[2]  A claim is plausible where the plaintiff alleges factual content that "allows the court to draw the reasonable inference that the

---

[1] *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009).
[2] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

defendant is liable for the misconduct alleged."[3]  The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports a plaintiff's claims.[4]

## BACKGROUND

For purposes of the instant Motion, the Court accepts as true all well-pleaded facts in the Amended Complaint and construes them in the light most favorable to Plaintiff.

The facts in this case arise from Defendant Trooper David Lacey's arrest of Plaintiff Crystal Cross during the evening of February 24, 2012.  On that night, at approximately 7:30 pm, Plaintiff was driving her car northwest on Glenn Carrie Road in Hull, Georgia.  At that time, Defendant was on routine patrol, traveling in the opposite direction when he noticed Plaintiff's vehicle.  Immediately after passing Plaintiff, Defendant turned around in a driveway and pursued her vehicle because she failed to dim her headlights.  Defendant initiated his emergency lights, but Plaintiff did not pull over.  Instead, Plaintiff continued to drive until she reached her intended location—a friend's house nearby.

After she parked in the driveway, Plaintiff exited her car.  Shortly thereafter, Defendant pulled in behind her, exited his patrol car, and commanded Plaintiff to get back in her car.  Plaintiff did as she was told while Defendant returned to his patrol car to

---

[3] *Iqbal*, 556 U.S. at 678.
[4] *Twombly*, 550 U.S. at 556.

radio dispatch.  After doing so, Defendant approached Plaintiff's car and attempted to open her car door, but it was locked.  Defendant ordered Plaintiff to open the door and step out of her car.  Plaintiff did not comply.  Defendant then hammered his fist on the car door and threatened to bust the window if Plaintiff did not open the door.

Plaintiff eventually complied with Defendant's orders and got out of her car.  At that point, Defendant attempted to place Plaintiff under arrest.  Plaintiff, however, physically resisted Defendant's initial attempt to arrest her.  In response to this resistance, Defendant forced Plaintiff to the ground and pinned her down by positioning himself on top of her.  Once Plaintiff was on the ground, all resistance from her ceased.  While on top of her, Defendant used his closed fists to strike Plaintiff between five and ten times in her face and head.  Plaintiff's arms were trapped underneath her, thus preventing her from resisting or defending herself.

Defendant eventually stopped striking Plaintiff and ordered her to "flip over" and threatened to continue hurting her if she did not comply.[5]  Plaintiff cried out that her eye was bleeding.  At that point, Defendant secured handcuffs on one of Plaintiff's wrists but could not maneuver her to secure the second cuff.  Defendant screamed for Plaintiff to give him her hand.  Plaintiff told him she was trying but could not because she was in pain.  Defendant again struck Plaintiff in the face with a closed fist and utilized a pain compliance technique in an effort to get Plaintiff's second hand cuffed.

---

[5] Am. Compl.  ¶ 36 [Doc. 6].

After securing the handcuffs, Defendant ordered Plaintiff to stand up, but Plaintiff told him she could not stand up or see. While Plaintiff remained on the ground, two other officers with the Georgia State Patrol arrived at the scene. Defendant told the other officers, "She clawed the shit out of [his] eyes," and Plaintiff "messed up" when she ran from him.[6]

Plaintiff was later charged with (1) failure to dim her headlights, in violation of O.C.G.A. § 40-8-31; (2) felony obstruction of a law enforcement officer, in violation of O.C.G.A. § 16-10-24(b); (3) driving under the influence of drugs, in violation of O.C.G.A. § 40-6-391(a)(2); and (4) fleeing or attempting to elude a police officer, in violation of O.C.G.A. § 40-6-395(a).

On February 14, 2014, while her criminal charges were still pending, Plaintiff filed the instant suit pursuant to 42 U.S.C. § 1983, alleging that Defendant used excessive force and thereby violated her Fourth Amendment rights.  As a result, Plaintiff alleges she suffered substantial pain, difficulty breathing, hearing loss, tinnitus, memory loss, a deviated septum and nasal fracture, medical expenses, psychological and emotional trauma, and economic loss.  Upon Defendant's motion, the Court stayed the present case pursuant to *Younger v. Harris*[7] pending resolution of the criminal proceedings.

---

[6] *Id*. at ¶ 46.

[7] 401 U.S. 37 (1971).

Thereafter, on March 5, 2015, the criminal proceedings concluded when Plaintiff entered a guilty plea to misdemeanor of obstruction of a law enforcement officer, in violation of O.C.G.A. § 16-10-24(a).  All other charges were dropped.  At the plea hearing, the prosecutor stated the factual basis for the plea was that "[Plaintiff] was stopped for failing to dim her headlights. [Defendant] had to catch up to her at a residence, and during that, a struggle ensued between [Plaintiff] and [Defendant]."[8]  Accordingly, on April 10, 2015, the stay in this case was lifted. Plaintiff then filed an Amended Complaint. Defendant responded by filing the instant pre-answer Motion to Dismiss the Amended Complaint for failure to state a claim.

## DISCUSSION

In the instant Motion, Defendant argues Plaintiff's Amended Complaint should be dismissed for failure to state a claim because (1) Plaintiff's excessive force claim is barred by *Heck v. Humphrey*;[9] (2) the facts alleged fail to state an excessive force claim; and (3) Defendant is entitled to qualified immunity.  The Court, however, finds that none of the three grounds warrant dismissal.

---

[8] Plea Hearing Trans. 2:11-14 [Doc. 15-2].  "[A] district court may take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a Rule 56 motion." *Serpentfoot v. Rome City Comm'n*, 322 F. App'x 801, 807 (11th Cir. 2009) (citing *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999)).
[9] 512 U.S. 477 (1994).

I.      *Heck v. Humphrey* **Bar**

In his first argument for dismissal, Defendant contends Plaintiff's conviction for misdemeanor obstruction of a law enforcement officer bars her excessive force claim pursuant to the dictates of *Heck v. Humphrey*.[10]  In *Heck*, the Supreme Court held that

> when a [plaintiff] seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of h[er] conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.[11]

The Supreme Court, however, was "careful in *Heck* to stress the importance of the term 'necessarily.'"[12] If there is "a construction of the facts that would allow the underlying conviction to stand," the § 1983 claim should be allowed to proceed.[13]

Here, Plaintiff was convicted of misdemeanor obstruction of a law enforcement officer, which is defined by Georgia law as "knowingly and willfully obstruct[ing] or hinder[ing] any law enforcement officer in the lawful discharge of his official duties."[14] "An essential element of the offense of obstruction . . . is that the officer be engaged in the lawful discharge of his official duties."[15]  An officer does not lawfully discharge his

---

[10] *Id.*

[11] *Id.* at 487.

[12] *Nelson v. Campbell*, 541 U.S. 637, 647 (2004).

[13] *See Dyer v. Lee*, 488 F.3d 876, 880 (11th Cir. 2007).

[14] O.C.G.A. § 16-10-24(a).

[15] *Dixon v. State*, 154 Ga. App. 828, 828 (1980) (internal quotation marks omitted).

duties when he uses unlawful or excessive force to effectuate an arrest.[16]

Defendant argues that *Heck* bars Plaintiff's excessive force claim, because, by pleading guilty, Plaintiff stipulated that Defendant was acting within the lawful discharge of his official duties when he arrested her.   An obstruction conviction, however, does not automatically bar a § 1983 excessive force claim.[17]   If, for example, the officer uses excessive force after or in response to the conduct giving rise to the obstruction conviction, then an excessive force claim may proceed without running afoul of *Heck*.[18]   Indeed, even if the plaintiff strikes the officer, a § 1983 claim may proceed if the officer responds with excessive force.[19]   To hold otherwise "would imply that once a person resists law enforcement, [s]he has invited the police to inflict any reaction or retribution they choose, while forfeiting the right to sue for damages."[20]

In this case, Plaintiff does not deny that she initially resisted Defendant's lawful attempt to arrest her—both by failing to get out of her car when Defendant ordered her to do so and physically resisting Defendant's initial attempt to place her under arrest.

---

[16] *See Walker v. Ratliff*, 7:08-CV-05 HL, 2011 WL 7546098, at *2 (M.D. Ga. Dec. 12, 2011); *Smith v. Canterbury*, CV 104-170, 2006 WL 717151, at  *4 (S.D. Ga. Mar. 15, 2006).

[17] *See Stewart v. Moses*, No. 7:14-CV-34 HL, 2014 WL 2986730, at *3 (M.D. Ga. July 2, 2014); *Hayward v. Kile*, No. 607CV068, 2009 WL 2045923, at *1 (S.D. Ga. July 13, 2009).

[18] *See, e.g., Moreland v. Dorsey*, 230 F. Supp. 2d 1338, 1347 n.4 (N.D. Ga. 2002) (finding that excessive force claim was not barred by plaintiff's pleas to misdemeanor and felony obstruction by fleeing from officers and striking one officer in the face).

[19] *See Dyer*, 488 F.3d at 882-83 (holding plaintiff's conviction for resisting officer with violence arising from kicking officer did not preclude excessive force claim arising from officers' acts after plaintiff was handcuffed); *VanGilder v. Baker*, 435 F.3d 689, 692 (7th Cir. 2007) (holding conviction of resisting an officer did not bar excessive force claim where plaintiff contended officer's beating him repeatedly in the head in response to plaintiff's initial resistance was excessive).

[20] *Dyer*, 488 F.3d at 884 (quoting *VanGilder*, 435 F.3d at 692).

Nor does she challenge the factual basis of her plea.  She admits that, when she got out of the car, a struggle ensued between herself and Defendant.  Nevertheless, accepting all the factual allegations in the Amended Complaint as true, Plaintiff ceased resisting when Defendant pinned her to the ground.  After her resistance ceased, Defendant struck Plaintiff in the head five to ten times while her arms were trapped underneath her and utilized a pain compliance technique to get her handcuffed.

To be sure, by pleading guilty to obstruction, Plaintiff admitted Defendant's initial attempt to arrest her while she resisted was lawful, but she did not admit Defendant's use of force <u>after</u> she stopped resisting was lawful.[21]  Because Defendant's conduct occurred after or in response to Plaintiff's initial resistance, Plaintiff's excessive force claim does not undermine her obstruction conviction.  Accordingly, the Court finds that *Heck* does not bar Plaintiff's § 1983 claim.

## II.    The Complaint Fails to State an Excessive Force Claim

Alternatively, Defendant argues that the facts as alleged in the Amended Complaint fail to state an excessive force claim.  "The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest."[22]  The law, however, recognizes

---

[21] *See Hadley v. Gutierrez*, 526 F.3d 1324, 1331 (11th Cir. 2008) (finding *Heck* did not bar excessive force after resisting arrest with violence conviction, even though criminal charge required showing that officers acted lawfully, because jury could believe officer punched plaintiff when he was not resisting).
[22] *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002).

that "the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."[23]   The determination of whether an officer exercised a reasonable degree of force in making an arrest "requires careful attention to the facts and circumstances of each particular case."[24]  Factors to be considered include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [s]he is actively resisting arrest or attempting to evade arrest by flight."[25]   The Eleventh Circuit also considers "the need for the application of force, the relationship between the need and amount of force used, and the extent of the injury inflicted."[26]   Considering all the factors in connection with the facts alleged in the Amended Complaint, Plaintiff has sufficiently stated an excessive force claim.

First, Plaintiff was stopped and arrested for minor offenses--failing to dim her headlights and misdemeanor obstruction of a law enforcement officer.   Defendant argues that although the initial crime was a minor traffic violation, once Plaintiff "violently attacked" Defendant, the crime became one of great severity.   There is, however, no allegation in the Amended Complaint that Plaintiff violently attacked

---

[23] *Graham v. Connor*, 490 U.S. 386, 396 (1989).
[24] *Id*.
[25] *Id*.
[26] *Mobley v. Palm Beach Cnty. Sheriff Dep't*, 783 F.3d 1347, 1353 (11th Cir. 2015) (internal ellipses omitted).

Defendant.[27]  Instead, the basis for Plaintiff's misdemeanor obstruction conviction is she physically resisted Defendant's initial attempts to arrest her.   Under Georgia law, "forcible resistance is not required to prove that an officer was hindered or obstructed in a misdemeanor obstruction case."[28]  Rather, "[a]rgument, flight, stubborn obstinance, and lying are all examples of conduct that may satisfy the obstruction element."[29] Though the facts show Plaintiff physically resisted Defendant, they do not allege Plaintiff violently attacked Defendant.   Moreover, the Eleventh Circuit has held that "the crime of misdemeanor obstruction is a crime of minor severity for which less force is generally appropriate."[30]

Second, Defendant argues that Plaintiff was a threat to his safety because she had violently attacked Defendant and was not yet handcuffed when Defendant got her on the ground.   As mentioned above, there is no allegation in the Amended Complaint that Plaintiff violently attacked Defendant.   Moreover, accepting the facts as true, it does not appear that Plaintiff posed a threat to Defendant's safety when he began striking her.   At that point, Defendant had Plaintiff pinned to the ground, with her arms trapped underneath her. She had ceased resisting, and yet Defendant continued to hit her.

---

[27] Defendant argues the Amended Complaint alleges Plaintiff clawed at Defendant's eyes. Defendant, however, misinterprets the alleged facts. Defendant said Plaintiff clawed at his eyes, but Plaintiff does not admit that she did so.

[28] *Wilcox v. State*, 300 Ga. App. 35, 37 (2009).

[29] *Id*.

[30] *Reese v. Herbert*, 527 F.3d 1253, 1274 (11th Cir. 2008) (internal quotation marks omitted).

Because Plaintiff was restrained, it does not appear that she was a threat to Defendant's safety.[31]

By the same token, the third factor—actively resisting arrest—also weighs in Plaintiff's favor.   Plaintiff was not actively resisting arrest when Defendant struck her because she ceased any and all resistance when Defendant pinned her to the ground. Defendant cites to *United States v. Edmonds*[32] as support for the proposition that Defendant was justified in punching Plaintiff because she refused to offer her hands to be cuffed.  The facts in *Edmonds,* however, are easily distinguishable.  In *Edmonds*, the court held that officers used reasonable force by tackling a fleeing suspect and punching him in the face because the suspect continued to resist and refused to put his hands behind his back to be handcuffed.[33]  Here, by contrast, Plaintiff was not resisting. In fact, she attempted to comply with Defendant's command to provide her hands but she could not because she was in pain, not because she refused to comply. The Eleventh Circuit has explained that the "gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force[.]"[34]

Similarly, the additional factors considered by the Eleventh Circuit regarding the need and amount of force as well as the extent of the injury inflicted weigh in support a

---

[31] *Cf. id.* at 1258-59, 1274 (finding reasonableness factors indicated officers' use of force was excessive where officers kicked, beat, and twisted plaintiff's arm, even though plaintiff was lying face down with one arm underneath him).

[32] No. CRIM. 12-70, 2013 WL 6002234, at *11 (W.D. Pa. Nov. 12, 2013).

[33] *Id.* at *4, 11.

[34] *Saunders v. Duke*, 766 F.3d 1262, 1267 (11th Cir. 2014) (quoting *Hadley,* 526 F.3d at 1330).

finding that Plaintiff has alleged an excessive force claim. Accepting the facts as true, Defendant continued to strike Plaintiff even though she was defenseless, broke her nose, and caused her eye to bleed to the point that she could not see.  Based on these facts, the reasonableness factors weigh decisively in Plaintiff's favor.  Accordingly, the Court finds Plaintiff has adequately stated a claim of excessive force in violation of the Fourth Amendment.

## III.    Qualified Immunity

Finally, Defendant argues the Amended Complaint should be dismissed because he is entitled to qualified immunity. "[Q]ualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known."[35]  "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation."[36]   Qualified immunity is immunity from suit and should be resolved as early as possible in the case.[37]

When an officer invokes qualified immunity, the initial burden is on the officer to show that "he was acting within the scope of his discretionary authority when the

---

[35] *Lee*, 284 F.3d at 1193-94 (quotation marks omitted).
[36] *Id*. at 1194.
[37] *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009).

allegedly wrongful acts occurred."[38]  Once the officer satisfies that burden, the burden then shifts to the plaintiff to show that (1) a violation of a constitutional right occurred, and (2) that right was "clearly established" at the time of the violation.[39]  In this case, Defendant was clearly acting within his discretionary authority as a Georgia State Trooper when he pulled over and attempted to arrest Plaintiff.  Therefore, the burden shifts to Plaintiff to show Defendant's use of force violated (1) a constitutional right that (2) was clearly established on February 24, 2012.

As mentioned above, the Amended Complaint sufficiently alleges a violation of Plaintiff's Fourth Amendment rights.  Therefore the only remaining issue is whether that right was clearly established.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[40]  A plaintiff can demonstrate that a right is clearly established by (1) pointing to a "materially similar case [that] has already been decided," (2) referring "to a broader clearly established principle that should control the novel facts of the situation," or (3) showing that "the conduct involved in the case so obviously violate[s] the constitution that prior case law is unnecessary."[41]  When determining whether a right is clearly established, "[the Court]

---

[38] *Lee*, 284 F.3d at 1194.

[39] *Pearson*, 555 U.S. at 232.

[40] *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

[41] *Terrell v. Smith*, 668 F.3d 1244, 1255 (11th Cir. 2012) (internal quotation marks and brackets omitted).

look[s] to law as decided by the Supreme Court, the Eleventh Circuit, or the Supreme Court of [Georgia]."[42]

The Court finds that the law clearly established Defendant's conduct violated the Fourth Amendment on the second basis listed above. "There is substantial case authority in the Supreme Court and this Circuit clearly establishing that harming a suspect after that suspect is compliant, cooperative, under control, or otherwise subdued is gratuitous and, therefore, constitutionally excessive."[43]  This principle holds true even in a case, like the one at bar, when "a previously fractious arrestee" ceases all resistance at the time the force is exerted.[44] Here, Plaintiff alleges she ceased all resistance and was compliant when Defendant pinned her to the ground.  Moreover, Defendant had control over her because her arms trapped underneath her, thus preventing her from moving.  Nevertheless, Defendant repeatedly struck her even after she stopped resisting and attempted to comply. Whether Plaintiff did in fact cease all resistance and attempt to comply with Defendant's commands is a matter best left for discovery.   Because the law was clearly established at the time of Defendant's conduct, Defendant is not entitled to dismissal on qualified immunity grounds.

---

[42] *Leslie v. Hancock Cnty. Bd. of Educ.*, 720 F.3d 1338, 1345 (11th Cir. 2013).
[43] *Merricks v. Adkisson*, 785 F.3d 553, 563 (11th Cir. 2015); *see also Saunders*, 766 F.3d at 1267, *Hadley*, 526 F.3d at 1330.
[44] *See Smith v. Mattox*, 127 F.3d 1416, 1418-19 (11th Cir. 1997) (officer was not entitled to qualified immunity when he broke plaintiff's arm as plaintiff voluntarily submitted to arrest, even though plaintiff had previously threatened officers with a baseball bat and fled).

**CONCLUSION**

Based on the foregoing, Defendant's Pre-Answer Motion to Dismiss [Doc. 15] is

**DENIED**.  Accordingly, Defendant's answer to the Amended Complaint must be filed

**within fourteen (14) days** of entry of this Order.

SO ORDERED, this 14th day of September, 2015.

S/ C. Ashley Royal
C. ASHLEY ROYAL, JUDGE
UNITED STATES DISTRICT COURT